UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUAN JOSE CHAPMAN VELOZ, on behalf of himself, and others similarly situated,<br><br>                              Plaintiff,<br><br>     -against-<br><br>CHESTNUT HOLDINGS OF NEW YORK, INC., 1231 LLC, and JONATHAN WIENER,<br><br>                              Defendants. | Case No.:<br><br>**FLSA COLLECTIVE AND RULE 23 CLASS ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff, JUAN JOSE CHAPMAN VELOZ ("Plaintiff"), on behalf of himself, and others similarly situated, by and through his attorneys, VALIANT LAW, hereby complains about Defendants CHESTNUT HOLDINGS OF NEW YORK, INC., ("Chestnut Holdings"), 1231 LLC and JONATHAN WIENER ("Wiener") (all Defendants collectively, the "Defendants" or the "Chestnut Enterprise"), and alleges, as follows:

## PRELIMINARY STATEMENT

1.      Defendant Chestnut Holdings is a real estate investment firm, owned and operated by Jonathan Wiener, which manages about 6,000 residential units across approximately 134 buildings throughout New York City (the "Chestnut Buildings").[1]

2.      The Company has a long history of compromising the quality of life for their tenants in the name of profits and corporate greed.

3.      Indeed, the New York Attorney General brought a lawsuit against Chestnut Holdings, which was settled in 2021, and which alleged that the company failed to ensure compliance with New York City's lead poisoning prevention laws to line their coffers.[2]  As a well-

---

[1]     *See* https://www.riverdalepress.com/stories/tenants-tell-landlord-theyve-had-enough,83648
[2]     *See* https://www.nyc.gov/site/hpd/news/047-21/attorney-general-james-hpd-take-action-protect-children-families-lead-poisoning-in

known New York City Public Advocate put it: "*Some of the worst landlords in our city put the health and safety of New Yorkers at risk to protect their own profits, and Chestnut Holdings is near the top of my office's list.*" [3]

4.    Sadly, Defendants' lucrative enterprise was also built at the expense of hard-working employees, who were denied overtime compensation and forced to endure other violations of their protected rights.

5.    Plaintiff was a long-term, hardworking employee of Defendants, who faithfully served them as a live-in maintenance and repair worker and was referred to as a "superintendent."

6.    Although Plaintiff worked well above forty (40) hours per week, Defendants failed to pay him proper wages and overtime in violation of the law.

7.    Plaintiff, on behalf of himself, and others similarly situated, alleges, pursuant to the New York Labor Law ("NYLL"), he is entitled to recover from the Defendants: (1) unpaid wages, overtime compensation, "spread of hours", and illegal deductions; (2) liquidated damages and statutory penalties pursuant to the New York Wage Theft Prevention Act; (3) pre-judgment and post-judgment interest; and (4) attorneys' fees and costs.

8.    Plaintiff, on behalf of himself, and others similarly situated, further alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), he is entitled to recover from the Defendants: (1) unpaid wages and overtime compensation; (2) liquidated damages; (3) pre-judgment and post-judgment interest; and (4) attorneys' fees and costs.

## PARTIES

9.    Plaintiff is an individual who, at all relevant times, resides in the County of Bronx, State of New York.  In or about 2013, Plaintiff began his employment with Defendants as a

---

[3]    *Id.*

building repair and maintenance worker and was referred to as a "superintendent." He worked continuously for Defendants until July 8, 2024. Throughout his tenure, Plaintiff worked mostly at a building managed, owned, operated and controlled by Defendants located at 1231 Fulton Avenue, Bronx, New York (the "Building"), which was and is one of the Chestnut Buildings, but he performed work at other buildings as well.

10.     Upon information and belief, at all times relevant, Defendant Chestnut Holdings of New York, Inc., is a domestic business corporation, with a principal place of business located at 5676 Riverdale Avenue, Bronx, New York 10471. Chestnut Holdings was the owner, operator, managing agent and/or property manager for the properties which are the subject of this complaint, including, but not limited to, the Building and Chestnut Buildings. Upon information and belief, Chestnut Holdings has the right to sell, rent or lease or approve the sale, rental or lease of housing units in over 130 buildings in New York City, including the Building and Chestnut Buildings.

11.     Upon information and belief, Chestnut Holdings is responsible for handling the rentals, repairs, maintenance, leases, improvements, remediation of code violations, and other work in all the buildings, as well as the hiring, firing, scheduling, supervising and payment of wages to employees and individuals performing such work at the buildings.

12.     Upon information and belief, at all times relevant, Defendant 1231 LLC is a domestic limited liability company, with a principal place of business located at 5676 Riverdale Avenue, Bronx, New York 10471. Upon information and belief, 1231 LLC was established and controlled by Weiner and the Chestnut Enterprise for the purpose of nominally holding title to the Building situated at 1231 Fulton Avenue, Bronx, New York.

13.     Upon information and belief, at all relevant times, Defendant Weiner is an individual who resides in the State of New York and is a principal, owner, member, managing

3

member, director, officer, shareholder and/or controlling shareholder of the Chestnut Enterprise, which includes Chestnut Holdings of New York, Inc., 1231 LLC, and other holding entities for the Chestnut Buildings, and had supervisory authority over Plaintiff and those similarly situated. Upon information and belief, Weiner is the head officer of the Chestnut Buildings, and has the right to sell, rent or lease or approve the sale, rental or lease of housing units in over 130 buildings in New York City, including the Building and Chestnut Buildings.

14.    Upon information and belief, Weiner is responsible for handling the rentals, leases, repairs, maintenance and other work in the Chestnut Buildings, as well as the hiring, firing, scheduling, supervising and payment of wages to employees and individuals performing such work at the buildings.

15.    Upon information and belief, Wiener maintains a principal place of business at 5676 Riverdale Avenue, Bronx, New York 10471.

16.    Upon information and belief, at all relevant times, Wiener was, and continues to be, the owner, operator, manager, managing member, controlling shareholder and/or senior executive in the Defendant entities and the entities that comprise Chestnut Enterprise, and through which the Chestnut Enterprise and Weiner invests in, owns operates and controls the Chestnut Buildings, and was also the principal, owner, member, managing member, director, officer, shareholder, controlling shareholder and/or senior executive of the entities that nominally hold title to the Chestnut Buildings.

17.    Upon information and belief, Wiener has managerial, supervisory and operational control over Chestnut Enterprise's financial affairs and personnel policies, including, but not limited to, matters and policies pertaining to work schedules, compensation of Chestnut Enterprise's employees and overtime policies.

18.    Wiener monitored and directed Plaintiff's and other similarly situated workers' work performance by, *inter alia*, regularly overseeing monthly meetings of superintendents and other maintenance and manual workers held at Defendants' offices in Riverdale.

19.    During these meetings, Wiener would, *inter alia,* communicate various instructions to workers, through Spanish-speaking supervisors, when necessary.  Plaintiff and other employees were regularly instructed as to how to perform their work and, importantly, that they were to be available twenty-four (24) hours per day, seven (7) days per week, to handle any issues which could arise at the building, without being compensated properly for this time worked.

20.    Upon information and belief, Wiener is an employer under the FLSA and NYLL and is liable for the wages of Plaintiff and those similarly situated under New York Business Corporation Law § 630 and New York Limited Liability Company Law § 609(c).

21.    Upon information and belief, at all relevant times, Defendants were a centrally managed real estate enterprise operating under Chestnut Holdings (the Chestnut Enterprise which owns, controls, and manages apartment buildings and commercial properties (the Chestnut Buildings) in the New York City Area, and the Chestnut Enterprise has employed more than One Hundred (100) superintendents, porters, janitors, manual workers and handymen.

22.    Upon information and belief, at all times relevant, the Chestnut Enterprise was controlled by individual Defendant Jonathan Wiener ("Wiener") who, along with the Defendant entities and Chestnut Enterprise, had the status of joint employer of superintendents, porters, handymen and other manual workers who performed worked at the Chestnut Buildings during the applicable FLSA and NYLL statute of limitations periods.

23.    At all relevant times, the Chestnut Enterprise had a principal place of business at 5676 Riverdale Avenue, Bronx, New York 10471, from which it owned, operated and managed

the Chestnut Buildings under the same policies regarding the payment of wages to building maintenance employees.

24.    Upon information and belief, title to each of the Chestnut Buildings is nominally vested in a limited liability company, each of which is wholly owned and controlled by the Defendants and Chestnut Enterprise, and each having Wiener and/or Wiener's agents as a principal and/or authorized signatory.

25.    The Chestnut Enterprise has applied common employment practices, policies and procedures to superintendents, maintenance and other manual workers of the Buildings, including, *inter alia*, the unlawful practice of willfully refusing to compensate these employees for all hours worked, paying below minimum wage, failing to pay the overtime premium for hours worked beyond the first forty (40) hours of work per work week, requiring them to be on call 24/7 without proper compensation, and failing to pay the spread of hours under NYLL.

26.    Furthermore, the Chestnut Enterprise had a policy and practice of requiring unlawful deductions from wages, including the Chestnut Enterprise's requirement that superintendents, porters, janitor, handymen and workers use their own money to pay for work-related expenses such as tools used solely for the benefit of the Defendants without being reimbursed, as well as phones, in violation of NYLL § 193 and 12 N.Y.C.R.R. § 141-1.9.

27.    Wiener, Chestnut Holdings, 1231 LLC, as well as all other entities holding title to the Chestnut Buildings, all operated as a centrally managed real estate enterprise, under common direction and control and were a joint enterprise and joint employer of Plaintiff and the class members.  With respect to personnel and employment policies, the Chestnut Enterprise would carry out its practices and policies through its managerial personnel, including property managers,

each of whom exercised direct oversight over the Chestnut Enterprise's superintendents, porters and other maintenance personnel worked at Chestnut Buildings.

28.     Defendants oversaw and had control over Defendants' policies and procedures with respect to its unlawful policies, acts and practices alleged herein, including but not limited to, payroll, timekeeping, scheduling, and otherwise running the business.  The Defendants share a common commercial business purpose, address and location.

29.     Although Defendants may be separate and distinct business entities and individuals, they engage in related activities.  Defendants shared Plaintiff, as well as other employees, acted in the interest of each other with respect to employees, paid their employees by the same method, shared control over their employees, hired and fired employees, administered disciplinary procedures, used the same Human Resources employees, supervised employee, maintained payroll, provided insurance, controlled the terms and conditions of employees' employment, employed the individuals who committed the unlawful acts alleged herein, and are themselves under common control and management.

30.     Upon information and belief, the corporations and/or entities are owned, operated, and controlled by the same owner, or owner group, operating as a unified operation and, upon information and belief, each provides mutually supportive services to the substantial advantage of the other, such that each entity may be treated as agents of each other, independent contractors, subcontractors, a single enterprise and/or joint employers.

31.     Upon information and belief, Defendants were Plaintiff's employers, at all times relevant.  Further, at all times relevant, the Defendant entities were and now are related to or form an organization, the entities' holding, parent, sister and/or subsidiary corporation and/or alter egos of each other and Weiner.  Further, upon information and belief, some, or all of the Defendant

entities are mere shell and sham entities without capital or assets and were conceived, intended and were used by Weiner and the entities as a device to avoid liability and for the purposes of substituting a financially insolvent corporation, entity or related subsidiary or parent company.

32.    Upon information and belief, the Defendant entities, at all relevant times, were the alter egos of each other and Weiner and there exists, and at all relevant times has existed, a unity of ownership between the Defendants such that any separateness has ceased to exist in that the entities, owners, members, and Weiner used and continue to use, comingle, or restrict the assets for their own use, without adequate consideration and have withdrawn funds from these entities for its parent organizations and Weiner's use and/or collusion, and at all times herein mentioned were, controlled, dominated, and operated by Defendant entities, their owners and Weiner, as their individual business and alter ego, in that the activities and business of Defendants were and are carried out without the holding of proper directors or shareholders meetings, comingled funds and accounts, improper insurance, no records or minutes of any material corporate proceedings were maintained, and Defendants entered into misrepresented and sham transactions.

33.    At all relevant times, Chestnut Holdings, the Chestnut Enterprise and 1231 LLC were, and continue to be, an "enterprise engaged in commerce" within the meaning of the FLSA.

34.    At all relevant times, the work performed by Plaintiff was directly essential to the business operated by Defendants and Plaintiff handled goods including but not limited to, cleaning supplies, electric, plumbing supplies, fixtures, appliances, smoke detectors, tools, window, flooring, tiles, plaster and other materials that were produced and/or transported through interstate commerce for performance of his work duties for Defendants.

35.    At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff lawfully earned overtime wages in contravention of the FLSA and NYLL.  Defendants knowingly

and willfully failed to pay Plaintiff for all hours worked and lawfully earned "spread of hours" premiums in contravention of the NYLL.   For example, Defendants have been sued for identical violations in the past but purposefully, knowingly, intentionally and/or recklessly refuse to correct these unlawful practices and intentionally continue to violate the law.

36.      At all relevant times, Plaintiff was an "Employee" of Defendants and the Chestnut Enterprise, including, but not limited to, the definition of the term under the FLSA and NYLL and other applicable laws below.

37.      At all relevant times, Defendants and the Chestnut Enterprise were an "Employer" and supervisors of Plaintiff, including, but not limited to, the definition of the term under the FLSA and NYLL and other applicable laws below.

## JURISDICTION AND VENUE

38.      The Court has jurisdiction over the subject matter of the action pursuant to 28 U.S.C. §§ 1331 for Plaintiff's claims arising under the laws of the United States, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for Plaintiff's claims arising under state and local laws.

39.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff and Defendants reside within the jurisdiction of this District, and/or Defendants have sufficient contacts with this District to subject it to personal jurisdiction at the time this action is commenced, and because a substantial part of the events and/or omissions giving rise to this action, occurred in this district.

## STATEMENT OF FACTS

### *Plaintiff's Employment with Defendants*

40.    Plaintiff began working for Defendants in 2013 to serve as a live-in repair, maintenance, janitor, manual worker and "superintendent" for Defendants and the Chestnut Enterprise.

41.    As is typical in New York City, Plaintiff was required to live in the Defendants' Building, and was forced to reside in an uninhabitable, hazardous, basement apartment at 1231 Fulton Avenue, Bronx, New York, which flooded frequently, and which Plaintiff was required to repair.

42.    The Building, which is a prewar construction, and which at all times relevant, had at least forty-seven (47) residential units, and required an inordinate amount of upkeep, was rampant with code violations, safety issues, tenant complaints and other issues.  As such, Plaintiff was constantly working, and Defendants required him to be on call 24 hours per day, 7 days per week.

43.    Plaintiff's duties included not only maintenance, but substantial duties outside the scope of traditional janitorial services.  Plaintiff was responsible for, and spent a substantial amount of his work hours, performing major repairs in the common areas and residential units, painting, plastering, roof repairs, replacing/installing plumbing and fixtures, emergency repairs for the building and tenants, demolition, installation of drywall, installing appliances, and emergency repairs for tenants and the Building, and other "handy man" work (these duties collectively referred to as "Non-Janitorial Work").  Under the NYLL, such "Non-Janitorial Work" is not traditional janitorial or superintendent duties and thus falls outside any "exemption" under the law.

44.    Additionally, he was responsible for cleaning, sweeping, mopping, cleaning windows, taking out the trash, shoveling snow, assisting tenants with lockouts, and other manual tasks.

45.    Further, Plaintiff was required to be on call 24 hours per day and 7 days per week as a live-in "superintendent," and he was responsible to work on evenings, nights, overnight, weekends, to perform his job duties, handle tenant emergencies, repairs, taking out trash during the evenings, snow removal at all hours and providing assistance to tenants if they were locked out or otherwise had any issues.

### *Plaintiff Was Paid Well Below Minimum Wage with No Overtime Premium*

46.    During Plaintiff's eleven-year tenure, Defendants failed to pay him properly.  Upon information and belief, Defendants' unlawful pay practices affect not only Plaintiff and the at least one hundred (100) other building superintendents, janitors, porters, handymen, and the like employed by Defendants and the Chestnut Enterprise.

47.    Plaintiff was a non-exempt hourly manual worker.  However, throughout his employment, he was paid the same amount every week, paid below minimum wage, and not properly compensated for any hours he worked in excess of forty (40) hours in any given week.

48.    Most weeks, Plaintiff worked an average of 60 to 70 hours per week or more and often seven days per week.  His typical schedule was supposed to be Monday through Friday from 8:00 a.m. to 5:00 p.m., but he was required to work on the evenings, weekends, nights and for other "emergencies" or when otherwise instructed by Defendants.  Indeed, some weeks he worked as many as 80 hours per week or more.  Although his pay statements noted an hourly rate (which was below minimum wage itself), Plaintiff's actual pay rate he received was much lower, since Defendants did not pay him for any hours worked in excess of 40 hours per week.

49.     For example, from 2019 through present, Plaintiff was paid a flat weekly rate for all hours worked, as follows:

     i.     $410.00[4] per week in 2019;

     ii.     $425.00[5] per week in 2020;

     iii.    $437.20 per week in 2021;

     iv.     $440.00 per week in 2022;

     v.     $454.00 per week in 2023;

     vi.     $462.00 per week in 2024.

50.     Defendants failed to pay Plaintiff the overtime premium for any hours work over 40 hours per week.  From 2018 through 2023, the minimum wage Defendants were required to pay Plaintiff was $15.00 per hour.  In 2024, the lawful minimum wage increased to $16.00 per hour.  As such, Defendants also paid Plaintiff below the applicable statutory minimum wages.

51.     Defendants knowingly and willfully operated their business with a policy of not paying either the FLSA overtime rate (of time and one-half) or the New York State overtime rate (of time and one-half) for work performed over forty (40) hours in a work week, as well as paying Plaintiff, and those similarly situated below the lawful minimum wage, as well as other violations alleged herein.

### *Plaintiff and the Class were Not Properly Paid for On-Call Time*

52.     In addition, Defendants also failed to compensate Plaintiff for time he spent "on-call."  Plaintiff was required to be "on-call" 24 hours per day, 7 days per week, was not permitted travel away from the Building to a distance that would not allow a prompt response to any "emergencies," and thus was required and engaged by Defendants to wait without compensation.

---

[4]     Estimated based upon Plaintiff's information and belief.
[5]     Estimated based upon Plaintiff's information and belief.

53. Defendants required Plaintiff to maintain a cell phone so that he was in ready communication with management and/or residents should Plaintiff need to work at any time.

54. Consequently, Plaintiff regularly responded to numerous tenants who lived in the building he serviced. As a result of the Building's condition (not to mention the general lack of maintenance, consistent with Defendants' "slumlord" tendencies and cost-saving measures), Plaintiff regularly responded to repair and service calls, whether it be a leaky faucet, crumbling plaster, electrical issues, or anything else needed. Plaintiff frequently had to attend such "service calls" on the weekends, evenings or late at night.

55. Plaintiff was so burdened with service calls outside of his normal working hours that he was not permitted to engage in personal endeavors, including travel, as Defendants required Plaintiff to remain at or near his building to respond to a service call on a moment's notice.

56. Despite being so burdened with obligations to his Defendants, Plaintiff was not compensated for his on-call time, nor was he compensated for all work actually performed.

***Defendants were One Enterprise and Constituted Joint Employers of Plaintiff and the Class***

57. Defendants, collectively as the Chestnut Enterprise, had the power to hire and fire Plaintiff and those similarly situated, supervised and controlled their work, schedules and conditions of employment, determined the rate and method of pay and maintained employment records. Defendants operated as one enterprise and performed related activities through: (i) unified operation; (ii) common control by Weiner and other individuals; (iii) for a common business purpose as alleged herein.

58. Specifically, upon information and belief, the constituent individuals and entities of Chestnut Enterprise functioned as a unified enterprise through ultimate control of Chestnut Buildings exercised by Wiener, and though the Chestnut Buildings may be titled in different entity

names, Wiener has substantial ownership interests in the entities that nominally hold title to the Chestnut Buildings.

59.     Further, the Chestnut Buildings are centrally managed, and the Chestnut Enterprise has publicized its status as a "family-operated" real estate business that focuses primarily on multiple family apartment buildings, and the Chestnut Enterprise issues uniform personnel policies and directives to its maintenance, repair, and manual working personnel, either through its field managers or other managerial personnel.

60.     Upon information and belief, through their integrated ownership and management structure, all the Defendants have an economic interest in the Building and the Chestnut Buildings, and Defendants run the business of all the Chestnut Enterprise as one operation, and Defendants' operations were interrelated and united.

61.     Defendants each had either functional and/or formal control over terms and conditions of work, and over the policies and practices with respect to the employment and compensation of the Plaintiff and the Class.

62.     Defendants employ or employed Plaintiff and the Class and the Collective and are or were their employers within the meaning of the FLSA and NYLL.

63.     Consistent with their policies and patterns or practices, Defendants harmed Plaintiff, and the Class and Collective Members as alleged herein.

64.     As described herein, Defendants have, for years, knowingly failed to adequately compensate Plaintiff and the Class and Collective Members (as defined below), including compensation and overtime wages due, under the FLSA and NYLL (Article 19), and unlawfully deducted sums from wages by requiring employees to pay for their own tools and supplies without reimbursement, in violation of NYLL § 190, *et seq*., NYLL § 650, *et seq*., New York Department

of Labor Regulations, 12 N.Y.C.R.R. 142 and 12 N.Y.C.R.R. § 2.10(a), amongst other violations as alleged herein.

<u>**COLLECTIVE ACTION ALLEGATIONS**</u>

65.    Plaintiff brings this action individually and as representative on behalf of all other current and former employees who worked for Defendants and/or at the Chestnut Buildings, such as superintendents, janitors, porters, handymen and other manual workers, who have been or were employed by the Defendants since April 2025 to the entry of judgment in this case (the "Collective Action Period"), and who were compensated less than the statutory minimum wage rate and/or less than the rate of time and one-half for all hours worked in excess of forty (40) hours per workweek (the "Collective Action Members").

66.    The Collective Action Members are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, and the facts upon which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there are at least 100 Collective Action Members who worked during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, or knowledge of their claims.  Therefore, Plaintiff submits that this matter should be certified as a collective action under the FLSA, 29 U.S.C. § 216(b).

67.    Plaintiff will fairly and adequately protect the interests of the Collective Action Members and have retained counsel that is experienced and competent in the field of conflict with those members of this collective action.

68.    This action should be certified as a collective action because the prosecution of separate actions by individual members of the class would create a risk of either inconsistent or

15

varying adjudications with respect to individual members of the class, or adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudication, or substantially impair or impede their ability to protect their interests.

69. A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as a collective action.

70. Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the common questions of law and fact common to Plaintiff and other Collective Action Members are:

i. Whether the Defendants employed Plaintiff and the Collective Action Members within the meaning of the FLSA;

ii. Whether the Defendants failed to keep true and accurate wage and hour records for all hours worked by Plaintiff and the Collective Action Members;

iii. What proof of hours worked is sufficient where the employer fails in its duty to maintain wage and hour records;

iv. Whether the Defendants failed to pay Plaintiff and the Collective Action Members statutory minimum wages for some hours worked, in violation of the FLSA and the regulations promulgated thereunder;

v.    Whether the Defendants failed to pay Plaintiff and the Collective Action Members overtime compensation for all hours worked in excess of forty (40) hours per workweek, in violation of the FLSA and the regulations promulgated thereunder;

vi.    Whether the Defendants' violations of the FLSA are willful as that terms is used within the context of the FLSA; and,

vii.    Whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated and statutory damages, interest, costs and disbursements, and attorneys' fees.

71.    Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

72.    Plaintiff and others similarly situated have been substantially damaged by the Defendants' wrongful conduct.

## CLASS ACTION ALLEGATIONS

73.    Plaintiff brings this action on his own behalf and on behalf of a class of persons under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

74.    Plaintiff brings his New York Labor Law claims on behalf of himself and all persons who were employed by Defendants at any time since April 2019 (the "Class Period") who worked for Defendants at the Chestnut Buildings, such as superintendents, janitors, porters, handymen and other manual workers were non-exempt hourly employees within the meaning of the New York Labor Law and have not been paid for hours worked and/or overtime compensation in violation of the New York Labor Law (the "Class").

75.    The persons in the Class identified herein are so numerous that joinder of all members is impracticable.  Although the identity and precise number of such persons is unknown, and the facts upon which the calculation of that number may be ascertained are presently within the sole control of the Defendants, upon information and belief, the Class contains more than 300 members and the Class consists of all hourly employees who have not previously brought independent claims and is so numerous that joinder is impracticable and most of whom would not be likely to file individual suits because they lack financial resources, access to attorneys, or knowledge of their claims.

76.    The claims of Plaintiff are typical of the claims of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation, where individuals lack the financial resources to vigorously prosecute a lawsuit in federal court against  corporate Defendants.

77.    Defendants have acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

78.    Plaintiff has committed himself to pursuing this action and has retained counsel experienced in employment law and class action litigation.

79.    Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff understands that, as class representative, he assumes a fiduciary responsibility to the Class members to represent their interests fairly and adequately, and that he must consider the interests of the Class members just as they would represent and consider their own interests, and that they may not favor their own interests over those of the Class members.

80.    Plaintiff recognizes that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Class.  Plaintiff understands that in order to provide adequate representation, he must remain informed of litigation developments and further understand that he may be called upon to testify in depositions and at trial.

81.    Plaintiff has the same interests in this matter as all other members of the Class and Plaintiff's claims are typical of the Class.

82.    There are questions of law and fact common to the Class which predominate over any questions solely affecting the individual members of the Class, including but not limited to:

    i.    Whether Defendants employed Plaintiff and the Class members within the meaning of the New York Labor Law;

    ii.    Whether Defendants failed to keep true and accurate wage and hour records for all hours worked by Plaintiff and the Class members;

    iii.    What proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

    iv.    Whether Defendants failed to pay Plaintiff and the Class members statutory minimum wages, in violation of the New York Labor Law and the regulations promulgated thereunder;

    v.    Whether Defendants failed to pay the Plaintiff and the Class members statutory overtime compensation for all hours worked in excess of forty (40) hours per workweek, in violation of the New York Labor Law and the regulations promulgated thereunder;

vi.     Whether Defendants failed to pay Plaintiff and the Class members the "Spread of Hours" in violation of the New York Labor Law and the regulations promulgated thereunder;

vii.    Whether Defendants unlawfully deducted compensation by requiring workers to pay for their own tools and supplies without reimbursement in violation of the New York Labor Law and the regulations promulgated thereunder; and

viii.    Whether Defendants are liable for all damages claimed hereunder including but not limited to compensatory, liquidated and statutory damages, interest, costs, attorneys' fees, and costs and disbursements.

## FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS
## FAILURE TO PAY MINIMUM WAGE AND OVERTIME UNDER THE FLSA

83.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

84.    Plaintiff brings this claim on behalf of himself and the Collective Members, and each allegation herein is asserted on behalf of Plaintiff and the Collective Members.

85.    At all relevant times, upon information and belief, Defendants were and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 207(a). Further, Plaintiff and the Collective Members is a covered individual within the meaning of the FLSA, 29 U.S.C. § 207(a).

86.    At all relevant times, the Defendants employed Plaintiff and the Collective Members within the meaning of the FLSA.

87.    Upon information and belief, at all relevant times throughout Plaintiff's employment, Defendants had annual gross revenues in excess of $500,000.

88.     Defendant Wiener is an individual who, upon information and belief, manages operations at Chestnut Holdings, and controls business decisions at Chestnut Holdings, including but not limited to, the decisions of what compensation Plaintiff and the Collective Members would receive, and the number of hours Plaintiff was required to work.

89.     At all relevant times herein, Plaintiff and the Collective Members performed his duties for Chestnut Holdings under the direction and control of Defendants and individual Defendant, Wiener.

90.     At all relevant times herein, Defendant Wiener had authority to make, and in fact made, decisions as to hiring, firing, and as to wages, and each acted as Plaintiff's employer as such term is used for purposes of the FLSA.

91.     Plaintiff and the Collective Members were entitled to be paid at the rate of time and one-half for his hours worked in excess of the maximum hours provided for in the FLSA.

92.     At all relevant times, the Defendants had a policy and practice of refusing to pay overtime compensation at time and one-half Plaintiff's and the Collective Members' regular rate of pay for all hours worked in excess of forty (40) hours per workweek.

93.     Plaintiff and the Collective Members did, in fact, work over forty (40) hours per week, many weeks during his employment.

94.     Plaintiff often worked sixty (60) or more hours per week; sometimes he worked up to eighty (80) hours per week.

95.     Defendants failed to pay Plaintiff overtime compensation in the lawful amount for hours worked in excess of forty (40) per week.

96.     Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and the Collective Members overtime

compensation for hours worked in excess of forty (40) each week, when they knew or should have known such was due and that non-payment of such would financially injure Plaintiff.

97.     Defendants failed to make, keep, and preserve accurate records with respect to Plaintiff sufficient to determine his hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201, *et seq*., including 29 U.S.C. §§ 211(c) and 215(a).

98.     Records concerning the number of hours worked by Plaintiff and the actual compensation paid to Plaintiff are in the possession and custody of the Defendants.  Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will seek leave of Court to amend this Complaint to set forth the precise amount due.  Defendants failed to properly disclose or apprise Plaintiff of his rights under the FLSA.

99.     As a direct and proximate result of the Defendants' willful disregard of the FLSA, Plaintiff is entitled to liquidated damages pursuant to the FLSA.

100.    Due to the intentional, willful and unlawful acts of the Defendants, Plaintiff and the Collective Members suffered damages in an amount not presently ascertainable of unpaid overtime wages, plus an equal amount as liquidated damages, and prejudgment interest thereon.

101.    Plaintiff is entitled to an award of his reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS**
**FAILURE TO PAY MINIMUM WAGE AND OVERTIME UNDER NYLL**

102.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

103.    Plaintiff brings this claim on behalf of himself and the Class Members, and each allegation herein is asserted on behalf of Plaintiff and the Class Members.

104.    NYLL § 198(1)-(a) expressly provides that "any employee paid less than the wage to which he or she is entitled under the provisions of this article" is entitled to recover his or her "full wages."

105.    Plaintiff and the Class Members was entitled to be paid at the statutory rate of time and one-half for all hours worked in excess of forty (40) hours per workweek.

106.    Defendants failed to pay Plaintiff and the Class Members for all hours worked in excess of forty (40) hours per workweek, in direct contravention of the New York Labor Law.

107.    At all relevant times, Defendants had and continue to have a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half for all hours worked in excess of forty (40) hours per work week, which violated and continues to violate the New York Labor Law.

108.    Defendants knowingly and willfully disregarded the provisions of the New York Labor Law as evidenced by their failure to compensate Plaintiff, at the statutory overtime rate of time and one-half for all hours worked in excess of forty (40) hours per week when they knew or should have known such was due and that non-payment of overtime compensation would financially injure Plaintiff.

109.    Due to the Defendants' New York Labor Law violations, Plaintiff and the Class Members are entitled to recover from Defendants his unpaid overtime compensation, liquidated damages, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law §§ 663(1) *et al.* and 198.

**THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS**
**FAILURE TO PAY "SPREAD OF HOURS" IN VIOLATION OF NYLL**

110.    Plaintiff repeats and realleges each and every allegation and statement contained in preceding paragraphs of this Complaint as if fully set forth herein.

111.    At all times relevant, Plaintiff was an employee of Defendants, and Defendants have been the employer of Plaintiff within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

112.    Defendants failed to pay Plaintiff and the Class Members compensation of one hour's pay at the basic minimum hourly wage rate for each day that the length of the interval between the beginning and end of their workday – including working time plus time off for meals plus intervals off duty – was greater than ten (10) hours.

113.    Defendants failed to pay spread of hours pay to Plaintiff and the Class Members in violation of 12 NYCRR §142-2.4 which states in relevant part, "An employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which: (a) the spread of hours exceeds 10 hours."

114.    At all times relevant, Plaintiff regularly worked more than 10 hours per day, and Plaintiff was paid below the applicable minimum wage.  Defendants failed to pay Plaintiff the spread of hours compensation to which he was entitled under the NYLL and the supporting New York State Department of Labor Regulations.

115.    Due to the Defendants' New York Labor Law violations, Plaintiff and the Class Members are entitled to recover from Defendants their unpaid minimum wages, unpaid overtime compensation, unpaid "spread of hours" premium, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law § 663(1) *et al*. and § 198.

## FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
## <u>FAILURE TO PROVIDE WAGE NOTICE AND PAY STATEMENTS UNDER NYLL</u>

116.    Plaintiff repeats and re-alleges each and every allegation and statement contained in all preceding paragraphs of this Complaint as if fully set forth herein.

117.    Plaintiff and the Class Members were not provided with a proper, written wage notice, and not provided with annual wage notices, as required by law.  NYLL § 195(1).

118.    The New York State Wage Theft Prevention Act requires every employer to notify its employees, in writing, with every payment of wages, of the dates of work covered, the rate of pay and basis thereof, hours worked, gross wages, deductions, allowances, and net wages.

119.    Defendants' failure to provide an accurate annual wage notice entitles Plaintiff and the Class Members to statutory damages of fifty dollars ($50.00) per week for each work week the violation continued to occur, to a maximum of five thousand dollars ($5,000).  New York Labor Law § 198(1-b).

120.    Defendants failed to furnish Plaintiff and the Class Members with an accurate statement with every payment of wages listing gross wages, deductions and net wages, in contravention of New York Labor Law § 195(3) and 12 NYCRR § 142-2.7.

121.    Defendants failed to keep true and accurate records of hours worked by each employee covered by an hourly minimum wage rate, the wages paid to all employees, and other similar information in contravention of New York Labor Law § 661.

122.    Defendants failed to establish, maintain, and preserve for not less than six (6) years payroll records accurately showing the hours worked, gross wages, deductions, and net wages for each employee, in contravention of the New York Labor Law § 194(4), and 12 NYCRR § 142-2.7.

123.     Defendants failed to comply with the notice and record keeping requirements of the New York State Wage Theft Prevention Act, and as such, are liable for civil penalties, attorneys' fees, and costs.

124.     Further, under the Wage Theft Prevention Act, employers must "furnish each employee with a statement with every payment of wages," which lists: "the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages." NYLL § 195(3).

125.     An employer who fails to provide a wage statement to an employee along with his or her wages, as required by the above provision, is subject to liability of $250 per workday, not to exceed $5,000. NYLL § 198(1-d).

126.     Defendants failed to provide Plaintiff and the Class Members with the statutorily mandated accurate wage statements each time they paid him, or at any other time he was entitled to be paid timely.  Plaintiff and the Class Members are accordingly entitled to recover $250 for each day he worked for Defendants in statutory penalties, the total amount of which must be determined at trial.

127.     Plaintiff is also entitled to be compensated for reasonable costs, disbursements, and attorney's fees.

**FIFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS**
**ILLEGAL DEDUCTIONS IN VIOLATION OF THE NYLL**

128.     Plaintiff incorporates each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

129.    In violation of the NYLL§ 193, 12 N.Y.C.R.R. § 141-1.9, and 12 N.Y.C.R.R. § 2.10(a), Defendants unlawfully deducted wages from Plaintiff and the Class Members, by, *inter alia*, requiring workers to spend their own money on work-related expenses, which further reduced wages below the required minimum wage, including but not limited to, the purchase of tools of the trade and supplies to complete work mandated by Defendants.

130.    As a result of the foregoing, Plaintiff seeks judgment against Defendants on his own behalf, and on behalf of the Class Members similarly situated for reimbursement of unlawful deductions, as well as liquidated damages, and interest, and such other legal and equitable relief from Defendants' unlawful and willful conduct as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests a judgment against Defendants as follows:

A.    Declaring that the Defendants engaged in unlawful employment practices prohibited under the FLSA and NYLL;

B.    Conditionally certify the FLSA Collective and authorize notice of this lawsuit to be sent to all putative Collective Action Members;

C.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.    An injunction and order permanently restraining Defendants and their partners, officers, owners, agents, successors, employees and/or representatives, and any and all persons acting in concert with it, from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

E.    An award of unpaid wages and overtime compensation due under the FLSA and New York Labor Law;

F.      An award of liquidated damages as a result of Defendants' failure to pay wages, and overtime compensation pursuant to 29 U.S.C. § 216;

G.      An award of liquidated damages as a result of Defendants' failure to pay wages, overtime compensation and illegal deductions pursuant to the New York Labor Law;

H.      An award of compensatory and punitive damages in an amount to be determined.

I.      Statutory penalties for Defendants failure to comply with the New York Wage Theft Prevention Act;

J.      An award of prejudgment and post-judgment interest;

K.      An award of costs and expenses of this action with reasonable attorneys' fees; and Such other and different relief as this Court determines to be just and proper under the circumstances.

L.      Awarding Plaintiff compensatory damages for mental, emotional, and physical injury, distress, pain and suffering and injury to reputation against Defendants, or any jointly or severally liable entity or person;

M.      Awarding Plaintiff all damages sustained as a direct and proximate result of Defendants' breaches of any agreements and/or otherwise unlawful conduct alleged herein;

N.      Awarding Plaintiff Punitive Damages;

O.      Awarding Plaintiff all interest, attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

P.      Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper.

## **JURY DEMAND**

Plaintiff requests a jury trial on all issues to be tried.

Dated:  April 24, 2025
White Plains, New York

Yours, etc.

VALIANT LAW

By:   */ Joseph Jeziorkowski*
Joseph Jeziorkowski, Esq.
Daniel Folchetti, Esq.
William Knight IV, Esq.
*Attorneys for Plaintiff*
*Juan Jose Chapman Veloz*
2 Westchester Park Dr., Suite 205
White Plains, New York 10604
914-730-2422
jjj@valiantlaw.com
dcf@valiantlaw.com
wfk@valiantlaw.com